IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GEOCOMPLY SOLUTIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| XPOINT SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff GeoComply Solutions Inc. ("GeoComply"), for its complaint against Defendant

XPoint Services LLC ("XPoint"), alleges as follows:

**PARTIES**

1.     GeoComply is a corporation organized and existing under the laws of British

Columbia, Canada with a principal place of business at 545 Robson Street #5, Vancouver, BC

V6B 1A6, Canada.

2.     Founded in 2011, GeoComply provides fraud prevention and cybersecurity

solutions that detect location fraud and help verify a user's true digital identity. Its award-winning

products are based on technologies developed for the highly regulated and complex U.S. online

gaming and sports betting market. Beyond that market, GeoComply provides geolocation fraud

detection solutions for streaming video broadcasters and the online banking, payments and

cryptocurrency industries, building an impressive list of global customers including Amazon

Prime Video, BBC, Akamai, DraftKings, FanDuel, and MGM. GeoComply's software is installed

on more than 400 million devices worldwide and analyzes more than 10 billion transactions a year.

3.     On information and belief, XPoint is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 1410 20th Street, Suite 202, Miami Beach, Florida 33139.

4.     On information and belief, XPoint provides fraud prevention and cybersecurity solutions that detect location fraud and help verify a user's true digital identity.

## NATURE OF THE ACTION

5.     This is a civil action for infringement of United States Patent 9,413,805 ("the '805 Patent"). This action arises under the patent laws of the United States, Title 35, United States Code.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has personal jurisdiction over XPoint. On information and belief, XPoint is a Delaware limited liability company residing in Delaware, so it purposefully avails itself of the benefits of conducting business in and through Delaware. Moreover, XPoint is present and maintains a presence in Delaware, at least through its incorporation in Delaware, and therefore is at home in Delaware.

8.     Venue is appropriate under 28 U.S.C. § 1400(b). On information and belief, XPoint resides in this district.

## THE '805 PATENT

9.     On August 9, 2016, the U.S. Patent and Trademark Office duly and legally issued the '805 Patent, titled "Geolocation Engine." A true and correct copy of the '805 Patent is attached as Exhibit 1.

2

10.     GeoComply owns the '805 Patent.

11.     The '805 Patent is valid, is enforceable, and claims patentable subject matter.

12.     The '805 Patent addresses technical problems arising out of the confluence of legal, regulatory, and commercial considerations in the nascent and increasingly popular online gaming industry. For a variety of reasons, gaming providers must be able "to demonstrate a secure method of geo-locating an end user before [the end user] can transact" with a gaming provider. Exhibit 1 at 1:5–8. For example, some U.S. states, such as New Jersey, permit online gaming, while other states, such as New York, prohibit online gaming. The '805 Patent provides an innovative geolocation engine that is highly secure and versatile, allowing gaming providers to securely and reliably determine a user's playing location—and, in turn, whether a user is permitted to use an online gaming service. *Id*. at 1:18–22.

13.     Trying to evade state restrictions on online gaming, some users employ programs and techniques to make the user's device appear as if it were in a location that is not its true location; such programs and techniques include VPNs, spoofing, proxy servers, and screen sharing. *See id*. at 2:5–11. The '805 Patent helps to solve this issue, among others, consistent with applicable legal, regulatory, and commercial requirements. For example, a user may use a device to access a service housed on a gaming server. *Id*. at 2:43–45. An application, plugin, applet, HTML code, or the like may be utilized to detect and collect the user device's geolocation data. *Id*. at 2:45–52. Geolocation data may include Wi-Fi geolocation data, internet protocol geolocation data, screen sharing program detection, proxy detection, cell tower data, and GPS data, among other data. *Id*. at 3:22–58. Geolocation data may be sent to a geolocation server for processing. *Id*. at 3:59–65. Access to a gaming service may be allowed or blocked based on the result of the

processing. *Id*. at 4:1–9. Each server may be implemented as one or more servers, virtual machines, data stores, and the like. *Id.* at 2:65–3:5.

**COUNT I: DIRECT INFRINGEMENT OF THE '805 PATENT**

14.    GeoComply incorporates the above paragraphs by reference as if fully set forth herein.

15.    PlayStar NJ LLC, a New Jersey limited liability company ("PlayStar"), operates an online casino subject to New Jersey gaming laws and regulations.

16.    On August 1, 2022, the New Jersey Division of Gaming Enforcement granted PlayStar a five-day "soft play" operations period to test the PlayStar online casino. Exhibit 2.

17.    On August 23, 2022, it was reported that PlayStar's online casino had a soft launch, allowing users to play virtual casino games online. Exhibit 3.

18.    News of the launch of the PlayStar online casino caused GeoComply to investigate PlayStar's geolocation provider. GeoComply's investigation revealed that XPoint was PlayStar's geolocation provider.

19.    On information and belief, the launch of the PlayStar online casino was XPoint's first public commercialization of its geolocation technology in the United States.

20.    XPoint and the end-users of the PlayStar online casino infringe at least claim 1 of the '805 Patent.

21.    The actions of the end-users of the PlayStar online casino are attributable to XPoint.

4

22.      Claim 1 of the '805 Patent reads as follows:

1. A method for determining a geo-location, the method comprising:
        transmitting a request to a first server by a first device;
        collecting geolocation data associated with the first device in response to
the request, the geolocation data collected by a module stored in memory and
executed by a processor on the first device, the first device in communication with
the first server which provides a service over a network;
        identifying that one or more selected programs are present at the first
device;
        transmitting the geolocation data and programs and a list of the present
selected programs to a second server;
        receiving a geolocation message from the second server, the geolocation
message generated at least in part from the geolocation data and a list of the
present selected programs; and
        providing the received geolocation message to the first server.

23.      XPoint performs a method for determining a geo-location that infringes claim 1 of
the '805 Patent when  an end-user of the PlayStar online casino attempts to place a wager at the
casino.

24.      An end-user of the PlayStar online casino performs the step of "transmitting a
request to a first server by a first device" when accessing the PlayStar online casino and attempting
to place a wager. This action causes the end-user's device to transmit a request to a first server.

25.      An end-user's action of transmitting a request to a first server by a first device is
attributable to XPoint. For example, XPoint conditions an end-user's participation in an activity
or receipt of a benefit upon the end-user's performance of the step of transmitting a request to a
first server by a first device. An end-user who wishes to place a wager at the PlayStar online casino
must transmit a request to a first server from his or her device. On information and belief, New
Jersey law requires online casinos and sportsbooks to geo-locate users attempting to place a wager.
The end-user's geolocation and participation in the PlayStar online casino, for example, are thus
conditioned on the user transmitting a request to a first server.

5

26.    XPoint also establishes the manner or timing of an end-user's transmitting a request to a first server by a first device. On information and belief, XPoint integrates its geolocation technology into the PlayStar online casino by providing PlayStar with certain XPoint software. XPoint thus provides the end-users of PlayStar with the manner of transmitting a request to a first server, which then causes the geo-location method to proceed by operation of XPoint software.

27.    XPoint causes to be performed the step of collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device, the first device in communication with the first server which provides a service over a network. On information and belief, XPoint software integrates into the PlayStar online casino software. On information and belief, after an end-user transmits a request to a first server by a first device, an activity attributable to XPoint, the request causes the collection of geolocation data associated with the first device. The first device is in communication with the first server, which provides a service (e.g., online gaming) over a network (e.g., the internet).

28.    On information and belief, XPoint causes to be performed the step of identifying that one or more selected programs are present at the first device. XPoint advertises on its website that its geolocation technology "delivers a best-in-class toolset for verifying and validating locations, connections and device information." https://xpoint.tech/#Fraud_Prevention (last visited Sept. 26, 2022). XPoint states that its "systems detect application spoofing, device tampering, false data and prohibited tools." *Id*. On information and belief, XPoint's features that "detect application spoofing, device tampering, false data and prohibited tools" identify that one or more selected programs are present on the first device. On information and belief, XPoint software causes the claimed identifying step to be performed.

6

29.     On information and belief, XPoint causes to be performed the step of transmitting the geolocation data and programs and a list of the present selected programs to a second server. On information and belief, XPoint software causes the transmission of the geolocation data and programs and a list of the present selected programs to an XPoint server to, for example, verify locations and identify possible location fraud attempts.

30.     On information and belief, XPoint causes to be performed the step of receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs. XPoint software displays the following screenshot illustrating the operation of the XPoint geolocation technology, which reflects various "Passed," "Warning," and "Fail/Blocked" indicators:



On information and belief, these indicators are examples of messages generated at least in part from geolocation data and a list of present selected programs. On information and belief, the XPoint server causes the geolocation messages to be received.

31.     On information and belief, XPoint causes to be performed the step of providing the received geolocation message to the first server. On information and belief, as illustrated in the example above, XPoint geolocation technology generates messages that are provided to the first

server. On information and belief, to inform PlayStar whether or not to accept a wager from an end-user, XPoint must provide the received geolocation message to the first server.

32.    Thus, XPoint, by integrating its geolocation technology into the PlayStar online casino, infringes at least claim 1 of the '805 Patent.

33.    XPoint's direct infringement has damaged, and continues to damage, GeoComply. GeoComply is entitled to recover from XPoint damages sustained as a result of XPoint's direct infringement of the '805 Patent.

34.    XPoint's acts of infringement have caused, and will continue to cause, irreparable harm to GeoComply. GeoComply and XPoint are direct competitors in the market for geolocation and location verification services. As such, XPoint should be enjoined from further infringement of the '805 Patent. GeoComply has spent valuable resources developing and refining—and patenting—its proprietary platform for reliably and accurately determining the true location of an end-user. Should XPoint continue to commercialize its geolocation technology, GeoComply will be forced to compete against its own patented invention.

35.    Additionally, on information and belief, XPoint is aggressively attempting to expand its market share through its infringing geolocation technology. For example, it was just announced on or about September 15, 2022 that a sports betting exchange known as Sporttrade went live—with XPoint as its geolocation provider. Exhibit 4. Moreover, a "sports stock market" platform called Mojo launched on or about September 19, 2022 and, on information and belief, XPoint is providing geolocation services for Mojo. Exhibit 5. If left unchecked, XPoint will likely continue to expand its infringing activities.

36.    GeoComply's damages are difficult to quantify, rendering legal damages an inadequate remedy for GeoComply.

37.     The public interest favors an injunction to protect GeoComply's investment-based risk that resulted in the '805 Patent and to enforce the Patent Act's statutory right to exclude others from practicing GeoComply's patented invention.

38.     Accordingly, the circumstances of XPoint's infringement warrant injunctive relief barring XPoint from further infringement of the '805 Patent.

39.     XPoint's infringement warrants a finding that this is an exceptional case, entitling GeoComply to recover its attorney fees and expenses.

## COUNT II: CONTRIBUTORY INFRINGEMENT OF THE '805 PATENT

40.     GeoComply incorporates paragraphs 1–13 by reference as if fully set forth herein.

41.     Alternatively to XPoint's direct infringement of at least claim 1 of the '805 Patent, XPoint contributes to the infringement of certain claims of the '805 Patent under 35 U.S.C. § 271(c) by offering to sell or selling its geolocation software to online gaming service providers, including but not limited to PlayStar.

42.     XPoint has "partnered" with PlayStar to provide geolocation services for PlayStar's online casino. Exhibit 6.

43.     PlayStar, jointly with its end-users and XPoint, have infringed, and continue to infringe, at least claims 1–3, 7–9, and 10 of the '805 Patent of the '805 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using, selling, and/or offering to sell gaming services at the PlayStar online casino.

44.     The actions of its end-users and XPoint are attributable to PlayStar. For example, PlayStar controls or directs the activities of its end-users and XPoint, as described in further detail below. Accordingly, PlayStar directly infringes the '805 Patent.

9

45.     PlayStar's online gaming customers directly infringe claims of the '805 Patent when its end-users access the online gaming service. PlayStar's online gaming customers control or direct the activities of all parties who commit acts that constitute infringement of claims of the '805 Patent.

46.     For example, claim 1 of the '805 Patent reads as follows:

1. A method for determining a geo-location, the method comprising:
      transmitting a request to a first server by a first device;
      collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device, the first device in communication with the first server which provides a service over a network;
      identifying that one or more selected programs are present at the first device;
      transmitting the geolocation data and programs and a list of the present selected programs to a second server;
      receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs; and
      providing the received geolocation message to the first server.

47.     Claim 1 is infringed when an end-user attempts to place a wager at the PlayStar online casino.

48.     Placing a wager at the PlayStar online casino includes performing a method of determining a geo-location. On its "Geolocation" webpage, PlayStar informs its desktop end-users that they "will be prompted to download Xpoint software which enables us to confirm your location within the state of New Jersey. After installing this, refresh your browser and you're good to go." https://nj.playstar.com/getting-started. PlayStar similarly informs its mobile end-users that they "will be directed to download our casino app which has built-in geolocation software. Simply install this and log in with your PlayStar account details – all our games will be right there at your fingertips and ready to play." *Id*.

49.    Additionally, PlayStar's FAQ page informs its end-users that it "use[s] geolocation to ensure that anyone playing on the PlayStar website or mobile application is located within New Jersey state, as required by regulations. By triangulating your Wi-Fi signal and IP address, we can establish your location." https://nj.playstar.com/faq. Paragraph 5.3 of PlayStar's End-User License Agreement indicates that PlayStar uses XPoint's geolocation software when determining the locations of its end-users: "Geolocation services, including XPoint, will make use of your location data." https://nj.playstar.com/terms-and-conditions.

50.    Placing a wager at the PlayStar online casino includes transmitting a request to a first server by a first device. This step is performed when, for example, an end-user attempts to place a wager at the PlayStar online casino through the PlayStar website or mobile app via a computer or mobile device. PlayStar instructs its end-users how to initiate game play:

To start playing with us, simply follow the steps below and you'll soon be ready to embark on your PlayStar casino experience.

**On Our App**

**1. Download**
Install the PlayStar app on an iOS or Android device. Click the 'Join' button in the top right-hand corner of the screen and follow the 3 easy steps to become a PlayStar. Then we'll just need a few details from you to confirm your identity and that you are of legal age to gamble online in the state of New Jersey. Although you don't have to be a resident of New Jersey, you do have to be physically located within the state to participate in real money gaming.

**2. Deposit**
Once your account is verified, head over to the cashier by clicking the 'Deposit' button. You can deposit funds using one of several different safe and secure payment methods – the balance will be credited to your account immediately. Remember that when you deposit you are eligible to claim our free Welcome Bonus.

**3. Play casino games**
You're all set! Tap the 'filter' menu or go to the homepage and choose your game from the slots, Slingo, table or card game categories. Why not enjoy a truly immersive casino experience that puts you right in the heart of the action by joining a Live Dealer table? Or maybe take a spin on one of the many feature-packed slot games we have? The choice is yours. We have a wide selection of real money online gambling games at your disposal.

11

https://nj.playstar.com/getting-started. On information and belief, when a user registers to play, attempts to deposit money, or attempts to place a wager, the user's device transmits a request to a first server. On information and belief, the actions of the end-user are attributable to PlayStar. For example, participating in online gaming is conditioned on the end-user completing the relevant action, and PlayStar at least establishes the manner for that participation.

51.    Placing a wager at the PlayStar online casino includes collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device, the first device in communication with the first server which provides a service over a network. For example, before an end-user is permitted to place a wager at the PlayStar online casino, PlayStar utilizes a plugin and/or a piece of software integrated in a mobile application, in either case stored in memory and executed by a processor on the end-user's device, to collect geolocation data. The PlayStar End-User License Agreement at ¶ 5.3 provides that "Geolocation services, including Xpoint, will make use of your location data. If you use such services, you consent to us transmitting, collecting, storing, and using your location data to determine your location and improve location based services. You may always withdraw this consent at any time by turning off the location settings on your mobile device, computer or tablet or by notifying us in writing that you would like to withdraw such consent." https://nj.playstar.com/terms-and-conditions.

52.    Additionally, the PlayStar End-User License Agreement at ¶ 5.4 provides that "prior to accessing real-money gaming, You will be required to download a 'plugin' from the Company's Geolocation Service provider. Through doing so, You provide consent for Your location to be verified via the aforementioned process each time You log into Your Account, as well as occasionally while You are logged in to Your Account." *Id*.

53.     Additionally, PlayStar's Privacy Policy states: "We are required by New Jersey State law to verify Your physical location when You engage in game play at PlayStar, ensuring that You are playing at the Website only from within New Jersey state lines. To ensure compliance with the relevant Act and Regulations, information regarding Your physical location is collected using geo-location technology." https://nj.playstar.com/privacy. PlayStar also has a Geolocation page on its website, which indicates: "To access games and other features on our website, you must have XPoint software installed on your Windows or Mac computer. If you haven't already done so, you will be prompted to download and install XPoint when you open a real-money game at PlayStar. Please make sure you have pop-ups enabled. You don't need the XPoint plugin if you're playing from our mobile App, but you will be required to have Location Services, GPS, and Wi-Fi all turned on. With iOS devices, please ensure the 'Precise Location' toggle is switched to ON." https://nj.playstar.com/geolocation.

54.     On information and belief, PlayStar has integrated the XPoint software into at least its mobile application. For example, XPoint advertises the ability for its software to be integrated into other systems, stating that its "secure platform is designed for easy integration with any partner systems" and that the "XPoint API can facilitate push, pull or direct integrations." https://xpoint.tech/#Fraud_Prevention. Moreover, the XPoint Privacy Policy states that the XPoint software "is embedded into the iGaming (defined as online sports wagering, online Casino, and online fantasy sports contests) websites and applications of our clients." https://xpoint.tech/privacy-policy/.

55.     On information and belief, the PlayStar software causes to be collected geolocation data associated with the end-user's device after the end-user's device transmits a request to place

a wager at the PlayStar online casino or place a wager in the PlayStar online casino. The PlayStar software is stored in memory and is executed by a processor on the end-user's device.

56.    On information and belief, placing a wager at the PlayStar online casino includes identifying that one or more selected programs are present at the first device. For example, PlayStar's Geolocation webpage states that "[i]f you have a VPN (Virtual Private Network), VNC (Virtual Network Client), or Remote Desktop software running on your computer or device, it will not be possible to locate you accurately. Make sure any software installed such as TigerVNC, TeamViewer, OpenVPN, or HMA are turned off." https://nj.playstar.com/geolocation.

57.    On information and belief, placing a wager at the PlayStar online casino includes transmitting the geolocation data and programs and a list of the present selected programs to a second server. On information and belief, PlayStar software causes to be performed the step of transmitting the geolocation data and programs and a list of the present selected programs to an XPoint server to, for example, identify possible location fraud.

58.    On information and belief, the actions taken by XPoint and/or the XPoint software are done at the direction or control of PlayStar.

59.    On information and belief, placing a wager at the PlayStar online casino includes receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs. Further, on information and belief, placing a wager at the PlayStar online casino includes providing the received geolocation message to the first server.

60.    On information and belief, XPoint determines whether an end-user has passed or failed an eligibility check, forms a geolocation message that includes whether the user passed or

14

failed, and provides that message to the server hosting the PlayStar online casino. Whether the end-user is allowed to place a wager at the PlayStar online casino is determined by the geolocation message received from the XPoint server. An example interface showing users who passed or failed a required check is advertised by XPoint:



61.    Accordingly, PlayStar, through its activities and jointly with the activities of its end-users and XPoint, directly infringes at least claim 1 of the '805 Patent.

62.    XPoint has offered to sell, has sold, and continues to offer to sell and to sell its geolocation software for verifying the location of end-users to online gaming companies.

63.    The XPoint geolocation software is used to practice processes that are claimed in the '805 Patent. The XPoint geolocation software performs steps constituting a material part of the inventions claimed in the '805 Patent.

64.    For example, claim 1 of the '805 Patent is reproduced below and is italicized to illustrate which parts of the claim are substantially performed by the XPoint geolocation software:

1. A method for determining a geo-location, the method comprising:

transmitting a request to a first server by a first device;

*collecting geolocation data associated with the first device in response to the request, the geolocation data collected by a module stored in memory and executed by a processor on the first device,* the first device in communication with the first server which provides a service over a network;

*identifying that one or more selected programs are present at the first device*;

*transmitting the geolocation data and programs and a list of the present selected programs to a second server*;

*receiving a geolocation message from the second server, the geolocation message generated at least in part from the geolocation data and a list of the present selected programs*; and

*providing the received geolocation message to the first server.*

65.     On information and belief, XPoint knows and at all relevant times knew that the XPoint geolocation software is made or adapted for use in an infringement of one or more claims of the '805 Patent, including claim 1.

66.     The XPoint geolocation software is not a staple article or commodity of commerce suitable for substantial noninfringing use. On information and belief, XPoint created the XPoint geolocation software specifically for online gaming companies to verify the locations of its end-users.

67.     Accordingly, XPoint is liable for contributory infringement of certain claims of the '805 Patent, including claim 1.

68.     XPoint's contributory infringement has damaged, and continues to damage, GeoComply. GeoComply is entitled to recover from XPoint damages sustained as a result of XPoint's contributory infringement of the '805 Patent.

69.     XPoint's acts of infringement have caused, and will continue to cause, irreparable harm to GeoComply. GeoComply and XPoint are direct competitors in the market for geolocation and location verification services. As such, XPoint should be enjoined from further infringement of the '805 Patent. GeoComply has spent valuable resources developing and refining—and

16

patenting—its proprietary platform for reliably and accurately determining the true location of an end-user. Should XPoint continue to commercialize its geolocation technology, GeoComply will be forced to compete against its own patented invention.

70.     Additionally, on information and belief, XPoint is aggressively attempting to expand its market share through its infringing geolocation technology. For example, it was just announced on or about September 15, 2022 that a sports betting exchange known as Sporttrade went live—with XPoint as its geolocation provider. Exhibit 4. Moreover, a "sports stock market" platform called Mojo launched on or about September 19, 2022 and, on information and belief, XPoint is providing geolocation services for Mojo. Exhibit 5. If left unchecked, XPoint will likely continue to expand its infringing activities.

71.     GeoComply's damages are difficult to quantify, rendering legal damages an inadequate remedy for GeoComply.

72.     The public interest favors an injunction to protect GeoComply's investment-based risk that resulted in the '805 Patent and to enforce the Patent Act's statutory right to exclude others from practicing GeoComply's patented invention. Accordingly, the circumstances of XPoint's infringement warrant injunctive relief barring XPoint from further infringement of the '805 Patent.

73.     XPoint's infringement warrants a finding that this is an exceptional case, entitling GeoComply to recover its attorney fees and expenses.

**PRAYER FOR RELIEF**

Accordingly, GeoComply respectfully requests that the Court enter judgment in its favor, granting it the following relief:

A.     Entry of a judgment that XPoint has infringed the '805 Patent under 35 U.S.C. §§ 271(a) and (c);

17

B.    Entry of an injunction enjoining XPoint and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, affiliates, and all others acting in privity with XPoint from further infringement of the '805 Patent;

C.    Entry of an award to GeoComply of damages to compensate it for the infringement of the '805 Patent by XPoint, in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court;

D.    Entry of a finding that, with respect to XPoint, this case has been exceptional and awarding to GeoComply its reasonable costs and attorney fees under 35 U.S.C. § 285;

E.    Entry of an order for XPoint to account to GeoComply for, and disgorge to GeoComply, all profits it has derived as a result of the unlawful acts complained of above;

F.    Entry of judgment against XPoint on all counts of this Complaint;

G.    Entry of an award to GeoComply of its costs in this action; and

H.    A grant to GeoComply of additional relief that the Court sees as just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, GeoComply demands trial by jury on all issues so triable.

Dated:  September 27, 2022

BAKER & HOSTETLER LLP

/s/  *Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1402
Wilmington, DE 19801
(302) 468-7088
jjlyons@bakerlaw.com

Douglas A. Grady
Paul J. Bruene
999 Third Avenue, Suite 3900
Seattle, WA 98104
(206) 332-1380
dgrady@bakerlaw.com
pbruene@bakerlaw.com

Andrew E. Samuels
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 228-1541
asamuels@bakerlaw.com

Kevin P. Flynn
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
(513) 929-3400
kflynn@bakerlaw.com

*Attorneys for GeoComply Solutions Inc.*